**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JASMINE CRANFORD, | : | Case No. 3:16-cv-366 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.    Introduction

Plaintiff Jasmine Cranford brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income.  She applied for benefits on June 28, 2012, asserting that she could not work a substantial paid job.  Administrative Law Judge (ALJ) Elizabeth A. Motta concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), the administrative record (Doc. #6), and the record as a whole.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Motta's non-disability decision.

## II. **Background**

Plaintiff asserts that she has been under a "disability" since July 1, 1998. She was eight years old at that time and was therefore considered a "younger person" under Social Security Regulations. 20 C.F.R. § 416.963(c). She has a limited education. 20 C.F.R. § 416.964(b)(3).

### A. **Plaintiff's Testimony**

Plaintiff testified at the hearing before ALJ Motta that she has three children who are seven years old, two years old, and one year old. (Doc. #6, *PageID* #71). Her mother has custody of the oldest child, and her two younger children are in foster case. *Id.* She stated that she does not see any of her children. *Id.* at 75.

Plaintiff has problems with depression and anxiety. *Id.* at 83. She cannot sit in one spot and pay attention to only one thing for thirty minutes. *Id.* at 83-84. Plaintiff last received treatment from Nova House in 2011. *Id.* at 78. She used to have problems with cocaine, crack cocaine, and marijuana but has been clean for two years. *Id.* at 78-79.

Plaintiff is supposed to take medication for ADHD and anxiety but does not because it makes her drowsy. *Id.* at 77. When the ALJ stated that she appeared drowsy at the hearing, she said that the medications make her uptight. *Id.* She further explained that she was drowsy at the hearing because she was up late the night before. *Id.*

Plaintiff dropped out of high school in the ninth grade and has not obtained a GED. *Id.* at 72-73. In school, she was in special education classes. *Id.* at 82. Her grades were "up and down." *Id.* She did not get along with other kids at school. *Id.* She fought—sometimes physically—with other kids and argued with teachers as well. *Id.*

Plaintiff lives in an apartment by herself. *Id.* at 70. She often stays with friends for days at a time because she does not like to be by herself. *Id.* at 73. She spends a lot of her time with her boyfriend as well. *Id.* at 74. When she is with her friends, they watch movies. *Id.* at 75. She does not have a normal schedule. *Id.* at 84. She does not wake up or go to bed at the same time every day, and she sometimes sleeps during the day. *Id.*

Plaintiff's father reminds her to pay her bills on time and helps her shop for groceries. *Id.* at 80. He also reminds her of her appointments and sometimes takes her to them. *Id.* at 84. Plaintiff is able to understand mail if it is really simple but otherwise has to have someone, usually her father, read it for her. *Id.* at 83. She is able to make sandwiches, use the microwave, and wash dishes. *Id.* at 74. When she tries to cook on the stove, she gets easily sidetracked and forgets the food on the stove. *Id.* at 81. Her friend does her laundry for her. *Id.* at 74. Her neighbor helps her clean her apartment. *Id.* at 81. She only uses computers for playing games, but she knows how to send an e-mail. *Id.* at 75-76. However, her spelling is not very good, and she does not send emails. *Id.* at 81. She has never had a driver's license but can use public transportation. *Id.* at 72, 75.

### B.    Plaintiff's Father's Testimony

Plaintiff's father, Jeffrey Van Cranford, Sr., also testified at the hearing before ALJ Motta. *Id.* at 85. He testified that he sees his daughter almost every day and assists her with "pretty much everything, organizing her day with the kids, or things that she needs, her appointments, her doctor's appointments, her mental health appointments, and things like that." *Id.* at 86. He explained that Plaintiff sees her son on Mondays and her daughter on Mondays, Wednesdays, and Fridays. *Id.* at 92-93. He has visitation and is allowed to take them to his house, and then she visits. *Id.* at 93. Plaintiff is not allowed to take the children by herself. *Id.* He helps her interact and play with her children. *Id.* at 95. Mr. Cranford also takes Plaintiff to the grocery store to help her choose healthy food and figure out her money. *Id.* at 86-87. If he did not help her at the grocery, he thought she would likely get things she wanted versus things she needed. *Id.* at 90. Although Plaintiff is "pretty good at keeping her house clean …," he sometimes helps her with washing dishes, putting clothes away, and organizing her stuff. *Id.* at 88.

Mr. Cranford testified that Plaintiff started having trouble in school when she was five years old. *Id.* She had difficulty staying focused and did not listen to authority. *Id.* at 88-89. As a result, she spent half the day at kindergarten and half at Good Samaritan Behavioral Health. *Id.* at 89. Plaintiff struggled with grades throughout school but she "was pretty smart in some areas, … like her long-term memory was good. She can remember things. But her short-term memory, she may not remember." *Id.* at 89-90. She had some problems getting along with her peers and teachers. *Id.* at 89.

Mr. Cranford explained that Plaintiff was in treatment at Cam[2] and last attended treatment in March. *Id.* at 90-91. He does not think that she completed her treatment. *Id.* at 91. Plaintiff took Ritalin for attention deficit disorder but she stopped taking it because she did not think it was working. *Id.* at 92. She then began taking Strattera, and Mr. Cranford thought it worked but he had to watch her put the pill in her mouth and swallow it. *Id.* He thought she might have had medication for depression or anxiety but he was not sure of whether she took it. *Id.* 92. Plaintiff sleeps a lot, and Mr. Cranford believes it is due to her lifestyle and "maybe some depression." *Id.* at 95.

### C. Medical Opinions

#### i. Mary Ann Jones, Ph.D.

Dr. Jones first evaluated Plaintiff in November 2012. *Id.* at 473. Dr. Jones noted that Plaintiff's grooming was good, her facial expressions were dull to anxious, and she was cooperative. *Id.* at 475. Her conversation was relevant but only semi-coherent. *Id.* She had "very minimal voice inflection. She proved marginal historian. Stream of thought proved retarded. Thought association proved fragmented and concrete." *Id.* at 476. Dr. Jones indicated that Plaintiff's demeanor was resigned to apathetic and her affect was sad to blunted. *Id.* Her degree of consciousness varied between distracted to vague, and she was minimally oriented to person, place, time, and circumstance. *Id.*

Dr. Jones diagnosed major depression, attention-deficit hyperactivity disorder, anxiety disorder, not otherwise specified (NOS), cannabis and cocaine abuse in nine-

---

[2] Mr. Cranford is referring to the Consumer Advocacy Model (CAM) Program. *See* Doc. #6, *PageID* #s 682-719.

month remission.  *Id.* at 478.  She assigned a global assessment of functioning (GAF) score of fifty-two, indicating moderate symptoms.  *Id*.  Dr. Jones assessed Plaintiff as functioning in the mild range of mental retardation and indicated that as a result, "she can be expected to have considerable difficulty in understanding, remembering, and carrying out instructions in a work setting."  *Id.* at 479.  Additionally, Dr. Jones noted that she is not able to stay focused and would have difficulty maintaining appropriate attention and concentration and sustaining adequate persistence and pace in order to perform various work tasks.  *Id*.  Plaintiff would also likely have limitations in responding appropriately to supervision and to coworkers in a work setting and in coping appropriately to common workplace stressors.  *Id*.

In January 2013, Dr. Jones administered the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV).  *Id.* at 431.  Plaintiff's full-scale intelligence quotient was 66, which falls in the mild range of mental retardation.  *Id*.  She achieved a verbal comprehension index of 70 (borderline range); perceptual reasoning index of 67 (mild range); working memory index of 69 (mild range); and processing speed index of 81 (low average range).  *Id*.  Dr. Jones noted, "These test results in no way significantly alter the conclusions of her previous [November 2012] exam …."  *Id.* at 432.

### ii.    Bonnie Katz, Ph.D., & Paul Tangeman, Ph.D.

On January 19, 2013, Dr. Katz reviewed Plaintiff's medical records.  *Id.* at 112-23.  She found that Plaintiff has four severe impairments:  affective disorders, ADD/ADHD, anxiety disorders, and drugs, substance addiction disorders.  *Id.* at 117.  Additionally, Plaintiff has a moderate restriction of activities of daily living; moderate difficulties in

maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. *Id.* She has no repeated episodes of decompensation. *Id.*

Dr. Katz opined Plaintiff is markedly limited in her ability to understand, remember, and carry out detailed instructions. *Id.* at 119. However, "She can understand, remember, and carry out simple routine tasks that do not require her to sustain close consistent [attention/concentration] over an extended period, nor to meet fast-paced production standards. [She] can make very simple decisions but would be unable to solve problems or independently manage competing task demands." *Id.* at 120. Plaintiff is also markedly limited in her ability to interact appropriately with the general public, but she is "able to interact with a small number of familiar others on a limited, brief[,] and superficial basis, in a nonpublic setting." *Id.* at 120. Further, she can "adapt to infrequent changes in routine where instructions for new tasks are repeated and demonstrated until [she] masters them." *Id.* at 121. Dr. Katz concluded that Plaintiff is not disabled. *Id.* at 122.

On May 8, 2013, Dr. Tangeman reviewed Plaintiff's records and agreed with Dr. Katz's findings. *Id.* at 125-37.

## III.  Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that

precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to

follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    The ALJ's Decision

As noted previously, it fell to ALJ Motta to evaluate the evidence connected to Plaintiff's application for benefits.  She did so by considering each of the five sequential steps set forth in the Social Security regulations.  *See* 20 C.F.R. § 416.920.  She reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful employment since June 28, 2012. |
| Step 2: | She has the severe impairments of polysubstance abuse disorder, substance-induced mood disorder, and learning disorder (and/or attention deficit disorder). |
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity, or the most she could despite her impairments, *see Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002), consists of "a full range of work at any level of exertion except limited to: simple, repetitive tasks; low stress work with no strict production quotas or fast paced work and only routine work with few changes in the work setting; no contact with the public as part of job duties; only occasional contact with coworkers, including no teamwork; no exposure to hazards, such as moving or dangerous machinery or working at unprotected heights and no climbing of ladders, ropes, and scaffolds." |
| Step 4: | She is unable to perform any of her past relevant work. |

Step 5:     She could perform a significant number of jobs that exist in the
            national economy.

(Doc. #6, *PageID* #s 41-58).  These main findings led the ALJ to ultimately conclude that

Plaintiff was not under a benefits-qualifying disability.  *Id.* at 57.

## V.     <u>Discussion</u>

Plaintiff contends that the ALJ erred in finding that Plaintiff's impairment did not

meet or medically equal Listing 12.05C.  She also argues that the ALJ erred in weighing

the medical opinion evidence and failed to consider her substance abuse/dependence

under the correct legal standard.  The Commissioner maintains that substantial evidence

supports the ALJ's finding that Plaintiff's impairments did not meet or medically equal a

listing, her evaluation of medical opinions, and her assessment of Plaintiff's substance

abuse/dependence.

### A.     **Listing 12.05C**

ALJ Motta found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments

in 20 C.F.R. Part 404, Subpt. P, Appendix 1.  (Doc. #6, *PageID* #44).  More specifically,

the ALJ concluded, "'paragraph C' criteria of listing 12.05 are not met because [Plaintiff]

does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a

physical or other mental impairment imposing an additional and significant work-related

limitation of function."  *Id.* at 46.

10

To meet the listing for intellectual disability,[3] an individual's impairment must satisfy the diagnostic description in the introductory paragraph and any of the four sets of criteria. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00A. Listing 12.05C provides:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> .   .   .
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. § 404, Subpt. P, App. 1, § 12.05C. Thus, a plaintiff seeking to establish an intellectual disability under Listing 12.05C must prove three elements: (1) an IQ score between 60 and 70; (2) a second impairment causing work-related limitations; and (3) subaverage general intellectual functioning with deficits in adaptive functioning that began before age 22. *Id.*

*IQ Score*

In her first evaluation, Dr. Jones opined, "[Plaintiff] was informally assessed as functioning in the mild range of mental retardation. (She may require an intelligence

---

[3] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." *See* 78 F. Reg. 46,499, 46,501 (to be codified at 20 C.F.R. § 404, subpt. P, app. 1). The Administration stated that the change "does not affect the actual medical definition of the disorder or available programs or services." *Id.* at 46,500. Thus, the amendment does not effect a substantive change, and the words "mental retardation" and "intellectual disability" have the same meaning and are sometimes used interchangeably.

test)." (Doc. #6, *PageID* #479). On January 10, 2013, Dr. Jones administered the WAIS-IV, noting Plaintiff "willingly attempted assigned tasks and appeared to give a good effort throughout the evaluative process." *Id.* at 431. She found that Plaintiff "achieved a full-scale intelligence quotient of 66, which falls in the mild range of mental retardation." *Id*. Dr. Jones noted, "These test results in no way significantly alter the conclusions of her previous exam …." *Id.* at 432.

The ALJ acknowledged the results of the WAIS-IV but disregarded them because Dr. Jones did not include a diagnosis of mental retardation or borderline intellectual functioning in her evaluation and did not amend it to include that diagnosis after she administered the WAIS-IV. *Id.* at 47.

Listing 12.05C, however, does not require that a doctor diagnose mental retardation or borderline intellectual functioning; it requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 …." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05C; *see also Lingo v. Colvin,* No. 3:13–cv–452, 2013 WL 6859870, at *5 (N.D. Ohio Dec. 29, 2013) ("There is no authority for the proposition that [a claimant] must be able to point to a diagnosis of mental retardation in order to satisfy [listing 12.05].") (quoting *Thomas v. Comm'r of Soc. Sec.,* No. 08–cv–1365, 2010 WL 1254788, *11 (N.D. Ohio Mar. 25, 2010)); *Wilkerson v. Comm'r of Soc. Sec.,* No. 3:08–cv–419, 2010 WL 817307, at *13 (S.D. Ohio March 5, 2010) ("Requiring such a diagnosis in cases of mental retardation would place formalism over substantive evidence."). Further, there was no reason for Dr. Jones to amend her first opinion. Her informal assessment of Plaintiff

functioning in the mild range of mental retardation was affirmed by the results of the WAIS-IV.

Accordingly, Plaintiff's full-scale I.Q. score clearly falls into the range required by Listing 12.05C.

*Additional Impairments*

Plaintiff has also shown that she has other impairments that impose an additional and significant work-related limitation of function. The ALJ's decision itself acknowledges the existence of such limitations. The ALJ found that her severe impairments include polysubstance abuse disorder, substance-induced mood disorder, and learning disorder (and/or attention deficit disorder). (Doc. #6, *PageID* #43). The ALJ's findings demonstrate that Plaintiff satisfies Listing 12.05C's requirement of an "additional and significant work-related limitation of function." The Regulations explain, "For paragraph [12.05]C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.,* is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(A). Consequently, the ALJ's determination at Step 2 that Plaintiff had several "severe" impairments under § 416.920(c) effectively determined that these impairments imposed "additional and significant work-related limitation of function" in satisfaction of Listing 12.05C.

*Adaptive Functioning*

The introductory paragraph of Listing 12.05 requires that the individual show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05. "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision, at p. 42. Additionally, "The American Psychiatric Association defines adaptive-skills limitations as 'concurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'" *Hayes v. Comm'r of Soc. Sec.,* 357 F. App'x 672, 677 (6th Cir. 2009) (quoting DSM-IV-TR at 49).

The record contains significant evidence of Plaintiff's deficits in adaptive functioning. Her counseling and school records detail her difficulties with both academics and social skills. When Plaintiff was only five years old, she underwent a psychological evaluation by Dr. Ramey at Children's Medical Center because she was sexually acting out and doing poorly in her kindergarten class. (Doc. #6, *PageID* #486). Additionally, she had several behavioral difficulties including serious temper tantrums and non-compliance. *Id.* Dr. Ramey diagnosed adjustment disorder with mixed

disturbance of emotions and conduct.  *Id.* at 489.  He noted, "the results of this evaluation suggest significant concern regarding [Plaintiff's] functioning at this time.

At six years old, Plaintiff continued to struggle in kindergarten.  *Id.* at 633.  She had a "poor attitude about school, curses at the teacher, gets in numerous fights, and is sent to the office on a daily basis."  *Id*.  Teachers and staff noted that she had a "[l]ack of academic progress, [and] serious student misconduct to the point of endangering other children and disrupting the learning process."  *Id.* at 591.

In August 1999, Plaintiff underwent testing at Dayton Christian Schools for placement.  On the Woodcock-Johnson Tests of Cognitive Abilities – Revised, Plaintiff scored a broad cognitive ability of eighty-six, which is in the low-average range.  *Id.* at 298.  She demonstrated relative strength in auditory processing and long-term memory and relative weakness in general knowledge and comprehension.  *Id.*  Further, on an achievement test, Plaintiff performed below average in reading skills, reading comprehension, math calculation, math reasoning, and written language.  *Id.*

In March 2001, when Plaintiff was in fifth grade, the Woodcock-Johnson Tests of Achievement-Revised showed Plaintiff lagging far behind:  her math reasoning grade equivalent was 2.8, written language grade equivalent was 3.2, and reading skills grade equivalent was 4.3.  *Id.* at 346.

In February 2002, when Plaintiff was eleven years old, her special education teacher noted she did not get along with other children on a daily to weekly basis.  *Id.* at 341.  Further, Plaintiff "is either very good, cooperative, [and] follows directions or she is very bad, rebellious, defiant, [and] disruptive."  *Id.*

During the 2006-2007 school year at the Mid Ohio Educational Service Center First School, Plaintiff failed six of twelve classes. *Id.* at 413. During the 2007-2008 school year at the ISUS Institutes, Plaintiff failed seven of ten classes. *Id.* at 414.

Dr. Katz and Dr. Tangeman, the State agency record-reviewing physicians, opined that she was markedly limited in her abilities to understand and remember detailed instructions; carry out detailed instructions; and interact appropriately with the general public. *Id.* at 119-20, 133-34. They also found that she was moderately limited in many areas, including her abilities to maintain attention and concentration for extended periods; make simple work-related decisions; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. *Id*

The ALJ herself found that Plaintiff has a mild restriction of activities of daily living and moderate difficulties in social functioning and concentration, persistence, or pace. *Id* at 44-45. Further, in formulating Plaintiff's residual functional capacity, the ALJ limited Plaintiff to "no contact with the public as part of job duties; only occasional contact with coworkers, including no teamwork …." *Id.* at 48. This suggests that Plaintiff does have deficits in communication and social/interpersonal skills. Significantly, Plaintiff receipt of Social Security benefits as a child from 1998 through 2009 illustrates that at least some deficits in functioning manifested before she turned twenty-two years old.

Together, this evidence shows Plaintiff's significant deficits in adaptive functioning as Listing 12.05C requires.

For the above reasons, Plaintiff's Statement of Errors is well taken.[4]

## B.    Judicial Award of Benefits

Remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted "only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

lacking." *Felisky*, 35 F.3d at 1041 (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

In the present case, the evidence of record establishes that a remand for award of benefits is warranted because the record contains overwhelming evidence, or strong evidence while contrary evidence is lacking, that Plaintiff met the criteria of Listing 12.05C.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be reversed and this case be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for payment of benefits; and

2. The case be terminated on the docket of this Court.

Date: June 20, 2017            *s/Sharon L. Ovington*
                               Sharon L. Ovington
                               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).